CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

AUG 2 5 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| GARY STERN, ET AL., <br><br> *Plaintiffs,* <br><br> v. <br><br> LYNCHBURG AREA LOCAL 1602, ET AL., <br><br> *Defendants.* | CIVIL ACTION NO. 6:04-CV-00058 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the motion shall be granted and the case shall be dismissed.

I.

Plaintiffs are permanent employees of the United States Postal Service ("USPS"), and are members of both the American Postal Workers Union, AFL-CIO ("APWU") and the Lynchburg Area Local 1602, American Postal Worker's Union, AFL-CIO ("the Local"). Plaintiffs work in Lynchburg either as flat sorters, who machines to sort flat mail such as magazines, or in the LIPs operations, using machines to sort irregular parcel post.

In 1998, the Local filed grievances on behalf of its members against USPS for USPS's use of casual (temporary) employees in lieu of utilizing full or part-time career postal employees in violation of a collective bargaining agreement. The collective bargaining agreement between

the national union and USPS (the "National Agreement") provides that USPS may use casual employees for limited terms to supplement the work force, but that USPS may not use such employees "in lieu of full or part-time employees." The parties here agree that since 1997, USPS violated the National Agreement by hiring casual employees in lieu of full or part-time employees on a continual and ongoing basis. In doing so, USPS avoided making full-time positions for permanent employees and avoided paying overtime to career employees who could have worked the shifts worked by casual employees.

On April 29, 1998, the Local settled its grievances regarding USPS's behavior with a settlement agreement. USPS agreed to cease the practice of staffing postal operations solely with casual employees and where it was discovered that casual employees were assigned to work for more than six months, USPS agreed to identify the area in which the casual employees were working and assign career employees to work those positions. Notwithstanding this agreement, USPS continued to improperly hire and employ casual employees in the manual and letter operations to perform work that career employees on the Overtime Desired List ("ODL") could have covered on overtime. As a result, the Local filed Grievance # CA 7-8-1-98, commonly referred to as the 1998 casuals-in-lieu-of grievance. Finally, on March 19, 2004, National Business Agent Mike Gallagher negotiated a settlement of Grievance # CA 7-8-1-98, resulting in USPS's agreeing to pay $300,000 to "employees designated by the APWU."

During the settlement proceedings, the Local reviewed printouts of the time worked by casuals to determine which permanent employees had been adversely affected by USPS's unauthorized use of casuals. One reviewer was Jimmy Franklin, a former president of the Local and the union official who had handled the Step 2 appeal of Grievance # CA 7-8-1-98. Franklin

2

had worked as a timekeeper for USPS for ten years and was familiar with the documents used by USPS for timekeeping. A second reviewer was then-Local president Butch Tinnell. Both reviewers analyzed the "clock rings" on the time sheets, which record whether the employee "clocking in" is a casual employee, the times that the employee worked, and the operational area in which the employee worked. As a result of this analysis, both reviewers determined that the misuse of casuals had occurred in the manual and letter sorting operations.

Subsequent to the March 19, 2005 settlement, Franklin and Tinnell met to discuss distributing the settlement. They determined that the only employees entitled to share in the settlement were those employees on the ODL for manual and letter automation operations. Accordingly, on May 4, 2005, the Local posted a notice that the 1996 casuals-in-lieu-of grievance had been settled in the amount of $300,000. The notice informed employees that the Local had designated "manual clerks and automation clerks who were on the Overtime Desired List (ODL) from July 1998 through June 1999" as the employee list entitled to a share of the settlement. The notice also stated that the Local "was in the process of finalizing the list to submit for payment to Payroll in Eagan, MN," and that "[a]ny perceived discrepancies or omissions must be presented in writing to a shop steward or Union official by May 14, 2004."

Prior to the May 14 deadline, some of Plaintiffs contacted the Local and APWU to inform them that they believed employees in the flat sorter and LIPs areas also had been adversely affected by USPS's violation of the National Agreement. They requested that, prior to the disbursement of the settlement proceeds, the unions conduct an investigation into these issues. The unions did not respond to this request. Ultimately, the settlement checks were issued only to qualifying manual and operations clerks in June 2004. Plaintiffs then filed suit on November 12,

3

2004.

Defendants have filed a motion to dismiss or, in the alternative, for summary judgment. They claim that the statute of limitations for Plaintiffs' claim has run and, in the alternative, that Plaintiffs cannot demonstrate that the unions breached their duty of fair representation.

II.

Defendants first argue that the claim is time-barred. The Court disagrees. The statute of limitations for a suit alleging a breach of the union's duty of fair representation is six months. *DelCostello v. Int'l Bro'd of Teamsters*, 462 U.S. 151, 154 (1983); *Murray v. Branch Motor Express Co.*; 723 F.2d 1146, 1147 (4th Cir. 1983). The six-month cause of action accrues when a plaintiff knows or should know that a violation of his rights has occurred. *Vadino v. A. Valey Engineers*, 903 F.2d 253, 260 (3rd Cir. 1990). Here, the cause of action did not arise until Plaintiffs were allegedly deprived of actual payment by the distribution of the settlement proceeds, in June 2004. Contrary to Defendants' contention, the May 4, 2004 notice did not initiate the limitations period, for it simply notified Plaintiffs that it was in the process of compiling a final payment list. No alleged injury occurred to Plaintiffs until June 2004, when their request for an administrative review went unheeded and the Local actually excluded Plaintiffs from settlement proceeds by paying them to other employees. For this reason, Plaintiffs' filing date of November 12, 2004 falls well within the six-month limitations period.

Defendants also argue, however, that Plaintiffs cannot prevail on the merits of their claim. As to this substantive point, the Court agrees. Because Defendants have submitted records of USPS time sheets as evidence regarding the reasonableness of the unions' action, the Court takes

4

Defendants' motion as one for summary judgment, in which a court considers the evidence in the light most favorable to the non-movant. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). It is well settled that a union breaches its duty of fair representation only if its conduct is "arbitrary, discriminatory, or in bad faith." *Vaca v. Snipes*, 386 U.S. 171, 190 (1967); *Dement v. Richmond, Fredricksburg & Potomac Railroad Co.*, 845 F.2d 451, 458 (4th Cir. 1988). This standard applies to a union's contract administration, enforcement, and negotiation, as well as any other instances where a union acts in a representative role. *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 77–78 (1991). Allegations that the union acted ineffectively or in poor judgment are not sufficient to establish that the union breached its duty of fair representation. *Thompson v. Aluminum Co. of America*, 276 F.3d 651, 658 (4th Cir. 2002); *Ash v. United States Postal Service, Inc.*, 800 F.2d 409, 411 (4th Cir. 1986) ("Simple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty. Rather the union's conduct must be 'grossly deficient' or in reckless disregard of the member's rights.") (citations omitted). *Ash* also noted that "a flawless performance is not required to fulfill the union's duty." *Id.* Further, unions have broad discretion in exercising their duties as representatives of their members. The United States Supreme Court has noted with approval the conclusion in *Vaca* that this discretion is "essential to the proper functioning of the collective-bargaining system." *Int'l Bro'd of Electrical Workers v. Foust*, 442 U.S. 42, 51 (1979).

In the instant case, Plaintiffs have not explained, nor can they, why the circumstances here justify the drastic act of intervening upon the unions' discretion in distributing the settlement proceeds. Plaintiffs correctly point out that, contrary to Defendants' original assertion, clock rings on the USPS time sheets indicate that some casuals were in fact employed

5

in the area of flat sorting. This bare fact, however, is insufficient to support Plaintiffs' allegation that the unions' treatment of permanent employees in flat sorting and LIPs was "arbitrary, discriminatory, or in bad faith." The settlement proceeds were issued specifically for USPS's violation of Article 7 of the National Agreement by using casuals *in lieu of* permanent employees. The proceeds were not, however, issued merely for the USPS's use of casuals—which in certain circumstances is authorized and expressly contemplated by the National Agreement. Although Defendants may have failed to note that some casuals were in fact used in flat sorting and LIPs operations, their evidence does support their conclusion that casuals in those areas were not used in an unauthorized manner. Plaintiffs' mere evidence that some casuals worked in these areas is insufficient to contradict Defendants' evidence and prevent summary judgment. This point would remain true even if, as Plaintiffs contend, further discovery would indicate that some casuals were also used in the area of LIPs operations. Further, other than making conclusory allegations of arbitrariness and bad faith, Plaintiffs have not provided any other evidence suggesting that union's conduct was "'grossly deficient' or in reckless disregard of the member's rights." *Ash*, 800 F.2d at 411 (citations omitted). Ultimately, a union is not required to perform its duties entirely free of errors, but only to avoid action that is "arbitrary, discriminatory, or in bad faith." Because it is impossible to reasonably conclude from Plaintiffs' evidence that the union's action qualifies as such, Defendants are entitled to summary judgment.

An appropriate Order shall issue.

. . .

. . .

6

Case 6:04-cv-00058-NKM-mfu   Document 20   Filed 08/25/05   Page 6 of 7   Pageid#: 527

. . .

ENTERED: *Norman K. Moon*
U.S. District Judge

*August 25, 2005*
Date

7